# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF
# INDIANA

| | |
|---|---|
| STATE OF INDIANA, and<br><br>DIEGO MORALES, in his official capacity as INDIANA SECRETARY OF STATE,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and<br><br>KRISTI NOEM, in her official capacity as SECRETARY OF THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>*Defendants*. | Civil Action No. _____ |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

The State of Indiana and Indiana Secretary of State Diego Morales, acting in his official capacity, ("Plaintiffs"), by undersigned counsel, allege as follows:

### NATURE OF THE CASE

1. The Indiana Constitution provides that only "[a] citizen of the United States" is permitted to vote in any State or local election. Ind. Const. Art. 2, § 2(a). Likewise, federal law restricts participation in federal elections to only U.S. citizens and makes it a criminal offense for non-citizens to register to vote or to vote in federal elections. 18 U.S.C. §§ 611, 1015(d).

1

2. The State of Indiana has a compelling "interest in protecting the integrity and reliability of the electoral process." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008). As Indiana's Secretary of State, Diego Morales serves as the "state's chief election official." Ind. Code § 3-6-3.7-1. By state law, both the Indiana Attorney General and the Indiana Secretary of State are tasked with safeguarding the lawful and orderly administration of Indiana elections. *See, e.g.*, Ind. Code § 3-6-4.1-22; Ind. Code § 3-6-3.7-1; Ind. Code § 3-7-26.3-10.

3. One means States may use to ensure the integrity of their elections is to request that the U.S. Department of Homeland Security ("DHS") verify the citizenship status of individuals on the states' voter rolls. Federal law provides that DHS "shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, *by* providing the requested verification or status information." 8 U.S.C. § 1373(c).

4. This nondiscretionary obligation under law is vital to the safety and security of elections. Congress expressly prohibited any interference—even by federal officials—with the prompt delivery of immigration and citizenship information to state officials by providing that "a Federal, State, … or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, [DHS] information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373(a).

5. Other federal statutes reaffirm the overriding nature of DHS's obligation: "Notwithstanding any other provision of Federal, State, or local law, *no State or local government entity may be prohibited, or in any way restricted*, from sending to or receiving from [DHS] information regarding the immigration status, lawful or unlawful, of an alien in the United States." 8 U.S.C. § 1644 (emphasis added).

6. Repeatedly, the U.S. Supreme Court has held that these provisions "require[] the federal government to 'verify or ascertain' an individual's 'citizenship or immigration status' in response to a state request." *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 602 (2011); *see also Arizona v. United States*, 567 U.S. 387, 412 (2012) ("Congress has obligated [DHS] to respond to any request made by state officials for verification of a person's citizenship or immigration status.").

7. Last fall, pursuant to these authorities, Secretary Morales asked DHS to confirm the citizenship status of certain individuals registered to vote in Indiana to determine whether those individuals were eligible to participate in federal and state elections.

8. Indiana has access to DHS's Systematic Alien Verification for Entitlements ("SAVE") program, but SAVE is not suited for verifying the citizenship status of voters because the use of SAVE requires an immigration identifier, such as an Alien Registration Number, that the Indiana Secretary of State does not and could not reasonably be expected to collect or maintain in most instances. *See* DHS, *Tutorial: Introduction to SAVE and the Verification Process for*

*SAVE Users* (Mar. 2024), https://perma.cc/UUT4-H3J5.  SAVE simply is not an adequate means by which DHS can fulfill its legal obligations to verify citizenship status for Plaintiffs' purposes.

9. The United States Citizenship and Immigration Services ("USCIS") is an agency of DHS that manages the nation's naturalization and immigration system. To perform its functions, USCIS uses and has access to various resources and databases, including the Person Centric Query Service ("PCQS"). PCQS utilizes a much broader array of identification information, making it possible for state officials to confirm citizenship status without having to use the immigration identifiers that States do not ordinarily possess.

10. On October 11, 2024, Secretary Morales and Attorney General Todd Rokita submitted a request to Ms. Ur M. Jaddou, the Director of USCIS, to verify using PCQS the citizenship of 585,774 individuals listed on the Indiana voter registration roll. In their request, Secretary Morales and Attorney General Rokita asked that the verification be completed before the November 2024 election so that Indiana could ensure the integrity of the election. Exhibit A.

11. Director Jaddou neither acknowledged receipt nor provided any kind of substantive response.

12. Previously, multiple other States sent similar requests to USCIS, all of which were either ignored or denied.

13. On October 14, 2024, Attorney General Rokita joined 15 other state Attorneys General to send a letter to Secretary Mayorkas, *see* Exhibit C, expressing

concern about the "delayed and inadequate responses" that DHS provided to the states and "urg[ed]" DHS "to faithfully execute [its] duty to verify voter registration information to the States," *id.* at 2–3. The state Attorneys General requested that DHS "provide [the States] with [DHS's] plan to provide an adequate response to the States' outstanding requests for verification of flagged, individual voter registrants" within three business days of receiving the letter. *Id.* at 3.

14. Secretary Mayorkas did not acknowledge the letter and failed to provide any kind of response before he left office on January 20, 2025. To date, DHS still has not provided a response.

15. On October 18, 2024, Secretary Morales and Attorney General Rokita followed up by email on their October 11 request to USCIS. *See* Exhibit B. They asked that USCIS "confirm receipt and provide an estimated timeframe within which [Secretary Morales and Attorney General Rokita] may expect to receive a response." *Id.*

16. Again, USCIS provided no response. After the passage of over six months since submitting their original request, Secretary Morales and Attorney General Rokita still have not received a reply from USICS, or even an acknowledgement of their request. Because USCIS refused to satisfy multiple requests from other states that were materially identical to the October 11 request, Secretary Morales and Attorney General Rokita have concluded that USCIS has chosen to deny their request and disregard its statutory obligations to verify citizenship status.

17. Thus, DHS has violated its nondiscretionary statutory duty "to respond to an inquiry" by a state agency "by providing . . . verification or status information." 8 U.S.C. § 1373(c).

18. As a result, Plaintiffs are unable to verify the citizenship of many individuals on Indiana's voter rolls or to respond to requests from local officials to confirm that specific individuals registered to vote are citizens, as they must be under federal law. 18 U.S.C. § 611.

19. Accordingly, Plaintiffs bring this suit to vindicate their rights under federal law and in furtherance of their duty to safeguard the integrity of Indiana elections.

20. The Court should grant an injunction and/or writ of mandamus ordering Defendants (1) to provide immediately to Plaintiffs access to the verification information to which they are entitled under 8 U.S.C. § 1373, and (2) to cease and refrain from interfering with the production of that information, as is required by 8 U.S.C. § 1373(a).

## JURISDICTION AND VENUE

21. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1346, 1361, 2201, and 2202, as well as 5 U.S.C. §§ 702, 705, and 706(1). The claims asserted herein arise under 8 U.S.C. §§ 1373 and 1644.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391(e)(1) because Indiana resides in every district within its borders, *see, e.g.*, *Holmseth v. Goddard*, No. 2:23-cv-11, 2023 WL 5519714, at *5 (E.D. Tenn. Aug. 25, 2023) (citing

*California v. Azar*, 911 F.3d 558, 570 (9th Cir. 2018)), and there is no real property involved in the action.

## THE PARTIES

23. Plaintiff the State of Indiana has a compelling "interest in protecting the integrity and reliability of the electoral process." *Crawford* 553 U.S. at 191. Indiana has both a sovereign duty and a federal statutory obligation to safeguard its elections. *See* 52 U.S.C. § 21083(a)(1)–(5).

24. Plaintiff Diego Morales is acting in his official capacity as the Indiana Secretary of State. He is the "state's chief election official" and is required to "provide [] support" to county voter registration offices by maintaining a "computerized list" of registered voters. Ind. Code § 3-6-3.7-1; Ind. Code § 3-7-26.3-10.

25. Defendant the U.S. Department of Homeland Security is the federal agency responsible for working with state and local governments to ensure the security and integrity of federal elections and with providing to States citizenship verification upon request. *See, e.g.*, 8 U.S.C. §§ 1373, 1644; DHS, *Election Security*, https://perma.cc/FC6P-E9D5 (visited Apr. 16, 2025). USCIS is an agency under the control of DHS.

26. Defendant Kristi Noem is Secretary of the U.S. Department of Homeland Security

## BACKGROUND

A.  **Federal Statutes Prohibit both Non-Citizens from Voting in Federal Elections and Requires DHS to Respond to State Inquiries Regarding Citizenship Statuses.**

27.     It is "unlawful for any alien to vote in any [federal] election." 18 U.S.C. § 611(a). That means that individuals such as lawful permanent residents and illegal aliens are barred from voting in federal elections. Likewise, Indiana law prohibits non-citizens from voting. *See* Ind. Code § 3-7-13-1.

28.     Congress imposed on Defendants a duty to respond to State requests for immigration and citizenship statuses. As explained, DHS "shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information." 8 U.S.C. § 1373(c); *see also* 8 U.S.C. § 1644.

29.     Indeed, Congress has made it unlawful for a "Federal, State, … or local government entity or official [to] prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, [DHS] information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373(a).

B.  **Indiana Has a Statutory Right to Have Citizenship Status Verified.**

30.     On both October 11 and 18, 2024, Secretary Morales requested pursuant to his statutory right to obtain access to citizenship information to

8

ensure the eligibility of 585,774 individuals registered to vote in Indiana. *See* Exhibits A, B.

31. Plaintiffs have sought access to "citizenship" information for a "purpose authorized by law," triggering Defendants' mandatory statutory obligations to "respond … by providing the requested verification or status information" and to avoid "in any way restrict[ing]" Plaintiffs' "recei[pt]" of "such information." 8 U.S.C. § 1373.

32. Because of DHS's failure to respond, Plaintiffs were unable to confirm whether the 585,774 individuals who were the subject of Plaintiffs' request are authorized to vote in federal elections as required by federal law and in Indiana elections as required by Indiana law. DHS's refusal to respond is an ongoing violation of its statutory duties.

33. Granting Indiana access to the SAVE program does not fulfill DHS's statutory obligations under 8 U.S.C. § 1373. The use of SAVE requires a unique immigration identifier. But Plaintiffs rarely have access to these identifiers. And those identifiers are not typically included on federal election voter registration forms. *See* USCIS, *About SAVE-Verification Process*, https://perma.cc/AA5K-QKWS (visited Apr. 16, 2025); DHS, *Tutorial: Introduction to SAVE, supra.*

34. SAVE does not allow Indiana to search based on name, date of birth, and the last four digits of a social security number—which are identifiers that the State typically possesses in connection with its administration of elections.

35. Even when such immigration identifiers are available, SAVE provides

9

inconclusive information because individuals' naturalization records are not always linked or updated within the SAVE system.

36. These limitations leave Plaintiffs unable to confirm whether certain individuals are actually citizens, as required by federal and state law to register to vote. Questions about certain voters' eligibility are likely to continue to occur for future elections.

37. To resolve instances where a registered voter's citizenship can be neither proven nor disproven with documentation possessed by the State, Indiana requested that DHS provide Indiana access to PCQS. As stated in their October 11 and 18, 2024, requests, Exhibit A, B, that program can determine whether an individual is a citizen by searching multiple USCIS information systems and databases, using search terms like name, date of birth, and social security number—information that Indiana typically has. See DHS, DHS/USCIS/PIA-010(a), *Privacy Impact Assessment Update for the Person Centric Query Service* (Apr. 6, 2018), https://perma.cc/RKN5-8CWS.

38. Although Defendants have a compulsory obligation to provide Plaintiffs with citizenship information upon request, Defendants have failed to do so.

## CLAIMS

### COUNT 1: AGENCY ACTION UNLAWFULLY WITHHELD OR UNREASONABLY DELAYED (VIOLATION OF 8 U.S.C. §§ 1373, 1644)
**(Injunctive Relief)**

39. Plaintiffs reallege each and every allegation above as if fully set forth

herein.

40. Congress has given this Court jurisdiction over federal questions under 28 U.S.C. § 1331, as well as agencies' refusal to act or unreasonable delay in acting in accordance with law under 5 U.S.C. §§ 702, 705, and 706(1).

41. This Court has authority to issue affirmative injunctions to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

42. Defendant the Department of Homeland Security is a federal government agency. 5 U.S.C. § 701(b).

43. Defendants have an unwavering statutory obligation under 8 U.S.C. §§ 1373 and 1644 to provide citizenship information, but they have refused to do so. That failure qualifies as an agency action unlawfully withheld or unreasonably delayed.

44. Plaintiffs satisfy the requirements for both a preliminary and a permanent injunction. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *D.U. v. Rhoades*, 825 F.3d 331, 335 (7th Cir. 2016) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 19, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008)). "[T]he difference between a preliminary injunction and a permanent injunction is meaningful: 'in granting or denying a *preliminary* injunction, the court [decides] only the plaintiffs' *likelihood of success on the merits*, whereas in granting or denying a *permanent* injunction, it [decides]

their *actual success on the merits.*'" *LSP Transmission Holdings II, LLC v. Huston*, 131 F.4th 566, 580 (7th Cir. 2025) (emphasis in original) (citation omitted).

45.   On the first element, explained above, Plaintiffs are certain to prevail on the merits of this claim, as Defendants have a clear statutory obligation to provide citizenship information, but they have failed and continue to fail to do so. Plaintiffs thus meet the first element of the standards for both a permanent and preliminary injunction. The remaining elements are the same for both types of relief. *Id.*

46.   On the second element, Plaintiffs have a compelling interest in election integrity, and the prospect of non-citizens voting in the federal election presents an irreparable harm. *See Summit Cnty. Democratic Cent. & Exec. Comm. v. Blackwell*, 388 F.3d 547, 551 (6th Cir. 2004).

47.   That harm is also imminent because, even though the 2024 election cycle has passed, this information is needed to verify that only citizens voted in the election and to ensure the integrity of Indiana's future elections.

48.   When the federal government is the defendant, elements three and four merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). There is no harm to anyone— governmental or private—by compelling disclosure of citizenship statuses to Plaintiffs pursuant to a federal statutory obligation; and "the public has a strong interest" in seeing that the federal government follows the law. *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 765–66 (2021).

**COUNT 2: WRIT OF MANDAMUS (VIOLATION OF 8 U.S.C. §§ 1373, 1644)**

49. Plaintiffs reallege each and every allegation above as if fully set forth herein.

50. "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Given the mandatory and unwavering language of 8 U.S.C. §§ 1373 and 1644, as confirmed by Supreme Court precedent, Defendants owe "a duty to the [P]laintiff[s]" to respond to their requests "by providing the requested verification or status information." Defendants' failure to do so is unlawful, and this Court is expressly empowered to "compel" them to fulfill their statutory obligations.

51. Plaintiffs have also "exhausted all other avenues of relief," because DHS has failed to provide access to the information they seek, and no regime exists for appealing refusals or denials—presumably because Congress made clear that Defendants have a mandatory duty to comply with Plaintiffs' requests. *See Heckler v. Ringer*, 466 U.S. 602, 616 (1984). Plaintiffs are therefore entitled to mandamus relief.

**COUNT 3: AGENCY ACTION NOT IN ACCORDANCE WITH LAW AND IN EXCESS OF AUTHORITY**

52. Plaintiffs reallege each and every allegation above as if fully set forth herein.

53. Under the Administrative Procedure Act, a court shall hold unlawful and set aside agency action—including the "failure to act"—when it is "in excess of

13

statutory jurisdiction, authority, or limitations, or short of statutory right" or is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 551(13), 701(b)(2), 706(2)(A), (C).

54. Section 1373(c) requires Defendants to "*respond* to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual … *by providing the requested verification or status information.*" 8 U.S.C. § 1373(c) (emphases added); *see also id.* § 1373(a) (forbidding federal entities and officials to "prohibit, or in any way restrict" States from "receiving" "information regarding the citizenship … status … of any individual"); *id.* § 1644 (prohibiting any restrictions on communication between State/local governments and DHS regarding immigration status of aliens).

55. These requirements apply to Plaintiffs' requests to verify immigration or citizenship status of a person even when they cannot verify through the SAVE program.

56. Defendants' failure to respond to Plaintiffs' inquiries violates 8 U.S.C. § 1373(c) and is therefore "not in accordance with law," 5 U.S.C. § 706(2)(A).

### COUNT 4:  DECLARATORY JUDGMENT

57. Plaintiffs reallege each and every allegation above as if fully set forth herein.

58. Under the Declaratory Judgment Act, a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

59. Section 1373(c) states that Defendants "shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information." 8 U.S.C. § 1373(c); *see also id.* § 1644.

60. When a state office requests verification of an individual's citizenship or immigration status because it cannot conduct a SAVE inquiry or a SAVE inquiry is inconclusive, Defendants owe a nondiscretionary duty under 8 U.S.C. § 1373(c) to "respond" to that inquiry "by providing the requested verification or status information" in some other way. There is no exception.

61. Plaintiffs are entitled to a declaration that Defendants have violated their statutory obligations, and that Defendants must "respond" to Plaintiffs' inquiries "by providing the requested verification or status information." 8 U.S.C. § 1373(c); *see id.* § 1644.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court provide the following relief:

A. An order holding unlawful Defendants' failure to provide Plaintiffs with access to confirm the citizenship of individuals for a purpose authorized by law, 8 U.S.C. § 1373(c); *id.* § 1644;

B. A declaration that Plaintiffs are entitled to a response to their inquiries under 8 U.S.C. § 1373(c); *id.* § 1644;

C. Preliminary and permanent injunctive relief compelling Defendants

immediately and continuingly to provide citizenship status of Indiana voters requested by Plaintiffs, including if needed by providing access to PCQS;

D. A writ of mandamus compelling Defendants immediately to provide citizenship status of Indiana voters requested by Plaintiffs, including if needed by providing access to PCQS;

E. An award of costs, attorneys' fees, and other expenses, including pursuant to 28 U.S.C. § 2412(d)(1)(A) because Defendants were not substantially justified in refusing to comply with their nondiscretionary statutory duty; and

F. Any other relief as the Court deems just and proper.

Dated: April 16, 2025                     Respectfully submitted,

THEODORE E. ROKITA
  *Attorney General of Indiana*

/s/ Corrine L. Youngs
Corrine L. Youngs
  *Policy Director & Legislative Counsel*
(Appearance forthcoming)

Blake E. Lanning
  *Assistant Chief Deputy*
(Appearance forthcoming)

Joshua J. David
  *Deputy Attorney General*
(Appearance forthcoming)

Office of the Indiana Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204

(317) 232-6201
Corrine.Youngs@atg.in.gov
Blake.Lanning@atg.in.gov
Joshua.David@atg.in.gov

*Counsel for the State of Indiana*